UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-631-KDB
3:20-cr-447-KDB-DCK-1

| | |
|---|---|
| **DONTAY LAFON ARMSTRONG,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTE**R is before the Court on Petitioner's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1]. Also pending is a Letter that is construed as a Motion to Appoint Counsel[1] [Doc. 6].

## I. BACKGROUND

Petitioner was charged in the underlying criminal case with: crack cocaine trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); eight counts of distribution of, and possession with intent to distribute, crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts Two through Nine); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Ten); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Eleven). [3:20-cr-447 ("CR") Doc. 34]. The Government filed an Information pursuant to 21 U.S.C. §§ 841 and 851 setting forth Petitioner's previous convictions for serious drug felonies, *i.e.*, York County, South Carolina Case

---

[1] Petitioner is cautioned that, in future, he must request relief from the Court in a "Motion." Letters and other filings will not receive a response.

Nos. 04GS4600871, 04GS4600872, 04GS4600873, 04GS4600874, 04GS4600877, 04GS4600868, 04GS4600869, and 04GS4600870. [CR Doc. 40].

Petitioner pleaded guilty to Counts One, Two, Nine, and Eleven pursuant to a written Plea Agreement in exchange for the United States' agreement to dismiss the remaining counts. [CR Doc. 39 at ¶¶ 1-2]. Petitioner admitted that he is, in fact, guilty as charged in Counts One, Two, Nine, and Eleven. [Id. at ¶ 1]. The Plea Agreement explains Petitioner's minimum and maximum sentences as follows: for Count One, not less than 10 years' imprisonment no more than life, and at least five years of supervised release; for Counts Two and Nine not less than five years nor more than 40 years' imprisonment, and at least four years of supervised release; and for Count Eleven a maximum term of imprisonment of ten years and no more than three years of supervised release, or, if Petitioner has three previous convictions for a violent felony or serious drug offense, a minimum term of 15 years' imprisonment and a maximum of life. [Id. at ¶ 5]. The Plea Agreement notes that an Information pursuant to § 851 has been filed, and that the Petitioner's sentencing exposure accordingly increased: for Count One, to a mandatory minimum of 15 years, nor more than life; and for Counts Two and Nine, to a mandatory minimum of not less than 10 years nor more than life. [Id.]. "HOWEVER, if the Defendant complies with each and every provision of the Plea Agreement, the United States will withdraw such Section 851 information at the time of sentencing…." [Id.]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges and, if applicable, any Information pursuant to 21 U.S.C. § 851." [Id. at ¶ 4].

The parties agreed to jointly recommend that: the amount of cocaine base that was known to or reasonably foreseeable by Petitioner was "in excess of eight hundred and forty (840) grams but less than twenty five thousand two hundred (25,200) grams" but the parties reserved the right

2

to advocate the specific drug amount and whether the base offense level should be 32, 34, or 36; the career offender (U.S.S.G. § 4B1.1) or the armed career criminal (U.S.S.G. § 4B1.4) provision of the U.S. Sentencing Guidelines may be used in determining the sentence, if applicable; the parties may argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, adjustments, and departures or variances from the applicable guideline range; the United States will not oppose a sentence at the bottom end of the applicable guideline range; and the United States will inform the Court and the probation office of all facts pertinent to the sentencing process and will present any evidence requested by the Court. [Id. at ¶ 8]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines in determining the sentence; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 16]. Petitioner expressly waived the right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 17-18]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 28].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> From in or about 2016 to in or about January 2020, in Gaston County … and elsewhere, DONTAY LAFON ARMSTRONG, did knowingly and intentionally conspire and agree with other persons to distribute and to possess with intent to distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly called "crack cocaine," a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.
>
> On or about January 21, 2020, in Gaston County … and elsewhere, the defendant, DONTAY LAFON ARMSTRONG, did knowingly and intentionally possess with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).
>
> On or about January 21, 2020, in Gaston County … and elsewhere, the defendant, DONTAY LAFON ARMSTRONG, knowing that he had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce,

4

one or more firearms, that is, one Rossi .357 caliber revolver, one Hi-Point 9mm model C9 handgun, and one Taurus .44 caliber revolver, all in violation of Title 18, United States Code, Section 922(g)(1).

Before DONTAY LAFON ARMSTRONG committed the offense charged in Counts One and Two in this Bill of Information, he had a final conviction for a serious drug felony, namely, a conviction for Distribution/Sell/Etc. Crack Cocaine near a School in South Carolina in 2004, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

[CR Doc. 42 at 1-2] (paragraph numbers omitted).

On February 3, 2021, a Rule 11 hearing came before a United States Magistrate Judge. [CR Doc. 64]. Petitioner stated under oath that he received a copy of the Indictment, discussed it with counsel, and fully understood the charges and the maximum and minimum penalties that could apply to him. [Id. at 3-6]. He admitted that he is, in fact, guilty of Counts One, Two, Nine, and Eleven. [Id. at 8]. Petitioner acknowledged the rights he was waiving by pleading guilty, and he agreed that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 6-8].

Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 11]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id.]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. [Id. at 11-12]. Petitioner

had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id. at 10-11].

The Presentence Investigation Report (PSR) scored the base offense level as 36 because the Petitioner possessed more than 8.4 kilograms but less than 25.2 kilograms of cocaine base, pursuant to U.S. Sentencing Guidelines § 2D1.1(a)(5).[2] [CR Doc. 49 at ¶ 25]. Two levels were added because Petitioner possessed one or more firearms, pursuant to U.S.S.G. § 2D1.1(b)(1); and because Petitioner maintained a premises for the purpose of manufacturing or distributing a controlled substance, pursuant to U.S.S.G. § 2D1.1(b)(12). [Id. at ¶¶ 26-27]. Petitioner is a career offender because: he was at least 18 years old at the time of the offense of conviction; the instant offense is a felony that is either a crime of violence or a controlled substance offense; and Petitioner has at least two prior felony convictions for either a crime of violence or a controlled substance offense. [Id. at ¶ 31]. However, the career offender offense level of 37 is lower than the otherwise applicable offense level of 40, and the higher offense level controls. [Id. at ¶¶ 31-32]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. [Id. at ¶¶ 41-43]. Petitioner had eight criminal history points and a criminal history category of IV, however, the criminal history category for career offenders is VI. [Id. at ¶¶ 61-62]. The resulting advisory guideline range of 360 months to life imprisonment. [Id. at ¶ 92].

A sentencing hearing came before the Court on August 5, 2021. [CR Doc. 65]. At that time, the parties explained that they had reached an agreement that the offense level should be 34 rather than 36, which the Court accepted. [Id. at 3-4]. Petitioner's counsel objected to the career offender enhancement, arguing that two of the prior convictions should be counted as one. [Id. at 5]. The Court rejected the career offender objection based on controlling case law. [Id.]. The revised

---

[2] The offense level is based on Counts One, Two, and Nine because the offense level for this group was higher than the offense level for Count Eleven, pursuant to U.S.S.G. § 3D1.3. [See id. at ¶¶ 33-39].

6

advisory guideline range was 292 to 365 months' imprisonment. [Id. at 6]. Petitioner's counsel asked the Court to vary downward to a 10-year sentence based on factors including Petitioner's health issues and family support. [Id. at 7-8]. Petitioner chose not to address the Court. [Id. at 8]. The Government argued for a guideline sentence in light of factors including his extensive criminal history and his conduct in this case. [Id. at 8-11]. The Government moved to dismiss the § 851 Information, and the remaining counts, which were granted. [Id. at 14-15].

The Court found that the PSR somewhat overstated Petitioner's criminal history and determined that an offense level of 35 and criminal history category of IV should apply, resulting in a reduced guideline range of 235 to 293 months' imprisonment. [Id. at 12-13]. The Court sentenced Petitioner within the reduced guideline range to 240 months' imprisonment for Counts One, Two, and Nine, and 120 months, concurrent, for Count Eleven. [Id. at 13]. The Judgment was entered on August 5, 2021. [CR Doc. 52]. The Fourth Circuit Court of Appeals granted the Government's Motion to Dismiss the Petitioner's direct appeal on March 29, 2022 because the issues he sought to raise fall "squarely within the scope of his waiver of appellate rights." [4th Cir. Case No. 21-4415, Doc. 37]. Petitioner's pro se Motion for Rehearing was denied on June 15, 2022. [Id., Doc. 44]. Petitioner filed a second appeal of the Judgment that the Fourth Circuit dismissed as duplicative on April 28, 2023, 4th Cir. Case No. 22-7006.[3] United States v. Armstrong, 2023 WL 3144546 (4th Cir. April 28, 2023).

Petitioner filed the instant pro se § 2255 Motion to Vacate on November 10, 2022,[4] while

---

[3] The duplicative direct appeal was consolidated with Petitioner's appeal of a text-only Order denying as moot Petitioner's request for documents to aid in preparing a § 2255 petition, 4th Cir. Case No. 22-7185. The Fourth Circuit denied the appeal of the text-only Order for lack of jurisdiction.

[4] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C.A. foll. § 2255 (addressing inmate filings).

his consolidated appeals were still pending. [Doc. 1]. He argues that (restated and renumbered): (1) counsel was ineffective because he "sat defendant's family down and clearly stipulated that if the defendant got 10 yrs on sentencing, that the defendant could take back his plea of guilty,"[5] and "made defendant commit purjury [sic] in that he told the defendant to plead guilty to facts that did not exist;" and (2) and his due process rights were violated because he "never received discovery of his case to know what evidence was against him." [Id. at 4]. The Motion to Vacate does not include a prayer for relief. [Id. at 6]. The Court ordered the Government to respond to the Motion to Vacate [Doc. 2], then briefly stayed the matter until the Fourth Circuit resolved the outstanding appeals [Doc. 4]. The Government then filed a Response arguing that the Motion to Vacate should be dismissed or denied because Petitioner's claims are conclusory and lack merit, he failed to show deficient performance or prejudice, and he waived his due process claim by pleading guilty and as part of his plea agreement. [Doc. 5]. Petitioner has not replied and the time to do so has expired. See [Doc. 2]. Accordingly, this matter is ripe.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims

---

[5] Petitioner refers to "attached Affidavits" in support of this claim, but no such documents were received by the Court. [Doc. 1 at 4].

8

set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

#### 1. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are

9

"entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee v. United States, 582 U.S. 357, 364-65 (2017) (the question is whether the defendant would have gone to trial, not whether the result of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Petitioner now claims that counsel was ineffective because he: promised Petitioner's family that he could "take back" his plea if he was sentenced to 10 years; and "made [him] commit purjury [sic]" at the Rule 11 hearing. [Doc. 1 at 4].

As a preliminary matter, these claims are too vague and conclusory to establish ineffective assistance of counsel in that they lack factual support, and Petitioner does not even attempt to demonstrate a reasonable probability that he would not have pleaded guilty but for counsel's alleged errors.[6] See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and

---

[6] Nor would it have been objectively reasonable for the Petitioner to proceed to trial. The Plea Agreement resulted in the Government's dismissal of seven serious charges, one of which is a § 924(c) offense that carries a mandatory consecutive sentence, as well as its dismissal of the § 851 Information. Petitioner also obtained a three-level reduction in the offense level for acceptance of responsibility, as well as the Government's agreement not to oppose a sentence at the low end of the guideline range, in exchange for his plea. Further, the Factual Basis, that Petitioner admitted is

conclusory allegations in a § 2255 petition may be disposed of without further investigation by the district court).

These claims are also conclusively refuted by the record. Petitioner stated under oath at the Rule 11 hearing that: he is guilty of Counts One, Two, Nine, and Eleven; he understood his sentencing exposure, the guideline range and sentence had not yet been determined, and the plea could not be withdrawn if the sentence is more severe than Petitioner expects; and he was not made any promises of leniency or a light sentence other than the terms of the Plea Agreement; and he was satisfied with counsel's services. See [CR Doc. 64 at 2, 6-8, 12]. Petitioner's present unsupported and self-serving claims that counsel promised his family that he could "take back" his plea if he received a 10-year sentence, and that counsel forced Petitioner to perjure himself at the Rule 11 hearing, are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Accordingly, Petitioner's claims that ineffective assistance of counsel rendered his guilty plea involuntary are dismissed and denied.

2. **Due Process Violation**

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993).

---

true, and the Statement of Relevant Conduct in the PSR demonstrate that all of the charged offenses were well supported by the evidence. See [CR Doc. 42; CR Doc. 49 at ¶¶ 12-18]. Petitioner cannot demonstrate a reasonable probability that he would have proceeded to trial but for counsel's alleged misadvice under these circumstances.

11

Case 3:20-cr-00447-KDB-DCK   Document 90   Filed 07/10/23   Page 11 of 14

Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Moreover, knowing and voluntary post-conviction waivers are generally enforceable. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) (an appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made); Lemaster, 403 F.3d at 200 (the Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement).

Petitioner now claims that he did not receive discovery in the criminal case, and therefore, he did not know what the evidence was. Petitioner knowingly and voluntarily pleaded guilty after this alleged error occurred and, in doing so, he waived the instant nonjurisdictional due process claim. See [CR Doc. 64]; Blackledge, 417 U.S. at 29-30. Further, Petitioner expressly waived his post-conviction challenges except for claims of ineffective assistance of counsel or prosecutorial misconduct. The instant due process claim is a claim of substantive error, rather than ineffective assistance of counsel or prosecutorial misconduct, and therefore Petitioner is also barred from raising it pursuant to his post-conviction waiver. Accordingly, this claim is dismissed.

### 3. Motion to Appoint Counsel

Finally, Petitioner seeks the appointment of counsel. [Doc. 6]. He states *verbatim*: "I'm asking the courts about appointment of counsel to help me with my case and 2255 that I have pending. I'm indigent, can't afford counsel." [Id. at 1].

There is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In § 2255 actions, the appointment of counsel is governed by the Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. The Court may appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B).

The Petitioner's vague and conclusory request fails to establish that the appointment of counsel is warranted. Further, this case does not require discovery or an evidentiary hearing, and the Court concludes that justice does not require the appointment of counsel. Accordingly, the Petitioner's Motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied, and the Petitioner's Motion to Appoint Counsel is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED and DENIED**.

2. Petitioner's Letter is construed as a Motion to Appoint Counsel [Doc. 6] and is **DENIED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: July 7, 2023

Kenneth D. Bell
United States District Judge

14
Case 3:20-cr-00447-KDB-DCK   Document 90   Filed 07/10/23   Page 14 of 14